FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DALE DOWERS; DEBRA DOWERS,
*Plaintiffs-Appellants*,

v.

NATIONSTAR MORTGAGE, LLC;
WELLS FARGO BANK, NA; WELLS
FARGO BANK MINNESOTA, NA,
Trustee Banc of America Alternative
Loan trust series 2003–2007,
*Defendants-Appellees.*

No. 15-15178

D.C. No.
2:14-cv-01679-
JCM-PAL

OPINION

Appeal from the United States District Court
for the District of Nevada
James C. Mahan, District Judge, Presiding

Argued and Submitted December 15, 2016
San Francisco, California

Filed March 31, 2017

Before: Diarmuid F. O'Scannlain, Ronald M. Gould,
and Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge Gould

# SUMMARY[*]

## Home Loans

The panel affirmed in part and reversed in part the district court's Fed. R. Civ. P. 12(b)(6) dismissal of plaintiffs' action asserting claims relating to the defendants' servicing of plaintiffs' home loan.

Affirming in part, the panel held that plaintiffs' Fair Debt Collection Practices Act claims under 15 U.S.C. §§ 1692c(a)(2), 1692d, and 1692e failed because the defendants did not engage in "debt collection" and were not acting as "debt collectors." Reversing in part, the panel disagreed with the district court's dismissal with respect to the claim under 15 U.S.C. § 1692f(6), and held that that provision governed defendants' alleged conduct because it expressly applied to the enforcement of security interests such as a deed of trust. The panel concluded that the district court should not have dismissed Count Four on the ground that Nationstar Mortgage, LLC was engaging in conduct related to non-judicial foreclosure.

The panel held that the district court correctly dismissed plaintiffs' claim of intentional infliction of emotional distress. The panel concluded that plaintiffs' allegations did not meet the first element of extreme and outrageous conduct for such a claim under Nevada law.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel held that the district court properly dismissed plaintiffs' claim of a violation of the Nevada Deceptive Trade Practices Act. The panel agreed with the district court's prediction that the Supreme Court of Nevada would hold that real estate loans did not fall within the Act.

## COUNSEL

Mark C. Fields (argued), Law Offices of Mark C. Fields, Los Angeles, California, for Plaintiffs-Appellants.

Ariel Stern (argued) and Natalie L. Winslow, Akerman LLP, Las Vegas, Nevada, for Defendants-Appellees.

## OPINION

GOULD, Circuit Judge:

Plaintiffs Dale and Debra Dowers filed this action against Defendants Nationstar Mortgage, LLC ("Nationstar"), Wells Fargo Bank, N.A. ("WFB"), and Wells Fargo Bank Minnesota, N.A. ("WFB Minnesota"), asserting claims relating to Defendants' servicing of Plaintiffs' home loan. Plaintiffs alleged violations of the Fair Debt Collection Practices Act ("FDCPA"), intentional infliction of emotional distress ("IIED"), and a violation of the Nevada Deceptive Trade Practices Act ("DTPA"). The district court dismissed Plaintiffs' complaint. With respect to the FDCPA claims, the district court found that Plaintiffs did not state a claim for relief because Defendants' alleged conduct was a non-judicial foreclosure attempt, not debt collection. We affirm the district court except for its dismissal of Count Four, which

asserts a violation of 15 U.S.C. § 1692f(6).     That provision—unlike the other three FDCPA provisions under which Plaintiffs allege violations—governs a "business the principal purpose of which is the enforcement of security interests." 15 U.S.C. § 1692a(6). Because Plaintiffs allege conduct related to the enforcement of a security interest, that claim should not have been dismissed on the ground that Defendants were not collecting a debt.

# I

## A

In May 2003, Plaintiffs refinanced a loan on their Las Vegas home by executing a Note and Deed of Trust with Bank of America, N.A. ("Bank of America").[1]  In August 2003, Bank of America assigned the Note to WFB Minnesota.  On January 28, 2010, ReconTrust Company, N.A. ("ReconTrust"), acting as Bank of America's agent, recorded a notice of default on Plaintiffs' loan.  The next day, Bank of America assigned the Deed of Trust to WFB Minnesota, and WFB Minnesota substituted ReconTrust as the trustee under the Deed of Trust.  On April 12, 2010, Plaintiffs filed a voluntary petition for protection under

---

[1] These facts are taken from the allegations in Plaintiffs' complaint, the exhibits attached to the complaint, and the publicly-recorded documents Defendants attached to their motion to dismiss. *See Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) ("When reviewing a motion to dismiss we consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." (internal quotation marks omitted)); *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) ("[A] court may take judicial notice of matters of public record." (internal quotation marks omitted)).

Chapter 7 of the Bankruptcy Code, and on July 21, 2010, they received a discharge under 11 U.S.C. § 727.

On September 23, 2013, Bank of America, acting "as attorney in fact" for WFB, substituted MTC Financial, Inc., doing business as Trustee Corps ("Trustee Corps"), as the trustee under the Deed of Trust. A week later, Trustee Corps recorded a notice of default on Plaintiffs' loan. On November 13, 2013, Nationstar sent Plaintiffs a letter stating that Bank of America had assigned to Nationstar the servicing rights to Plaintiffs' loan.

In light of the notice of default, a Nevada foreclosure mediator held a mediation between Plaintiffs and the lenders. During the mediation, the lenders could not produce the original loan documents. On February 13, 2014, the mediation office sent the parties a notice stating that, based on the mediator's recommendation, it would not issue a Certificate of Foreclosure.

On March 25, 2014, Nationstar sent Plaintiffs a letter stating, "You are in default under the terms of the conditions of the mortgage loan for failure to pay the required installments when due. Nationstar intends to enforce the provision of the Note and related security instrument[]." It also stated, "If you do not pay the full amount of the default, Nationstar may accelerate the entire sum of both principal and interest due and payable, and invoke any remedies provided for in the Note and security instrument, including but not limited to the foreclosure sale of the property." At the end of March 2014, a Nationstar representative called Plaintiffs and was "rude, bullying, and abusive." In light of these communications—and his belief that the outcome of the foreclosure mediation rendered Defendants incapable of

foreclosing on Plaintiffs' home—Mark Fields, Plaintiffs' attorney, wrote Nationstar a letter on April 2, 2014. Fields asserted that Nationstar's threat to foreclose was unlawful and also requested that all communications from Nationstar be directed to Fields, rather than to Plaintiffs. Fields also demanded that Nationstar repudiate its threat to foreclose, confirm that the Note owner had possession of the original loan documents, and confirm that Nationstar would not initiate any foreclosure proceedings until it obtains a certificate of foreclosure from the foreclosure mediation program.

Between May and June of 2014, Nationstar called Plaintiffs three times and placed written notices on Plaintiffs' door, stating in bold capital letters: "important," "please call," "please be ready to give your account number," and "we are expecting your call today." On June 18, 2014, Nationstar sent a loan statement directly to Plaintiffs. Fields sent Nationstar and Trustee Corps an email on June 25, 2014, reasserting his previous demands and adding a demand that Trustee Corps rescind the notice of default it had recorded on January 29, 2010. Nationstar sent a letter to Fields stating that it intended to respond by July 23. On July 15, Fields emailed Nationstar and Trustee Corps objecting to the delayed response and again demanding that the notice of default be rescinded. Trustee Corps rescinded the notice of default on July 16.

On July 21, 2014, a Nationstar representative sent Fields a letter asserting that Nationstar did not receive notice of Fields's representation of Plaintiffs until July 3, 2013, and that the owner of the Note was WFB Minnesota. With respect to Fields's demand that Nationstar confirm WFB

Minnesota's possession of the loan documents, the letter stated:

> [T]here are some circumstances where the owner has given temporary possession of the loan note to the servicer.  The owner does this in order to ensure that the servicer is able to perform the services and duties incident to the servicing of the mortgage loan, such as foreclosure actions, bankruptcy cases, and other legal proceedings.

Nationstar sent a letter directly to Plaintiffs on August 26, stating that Plaintiffs' home may be referred to foreclosure within fourteen days.  On August 27, a Nationstar representative sent Fields a letter refusing to answer whether it "or the lender" could provide the documents Fields had requested because such information "does not pertain directly to the servicing of the loan, does not identify any current servicing errors, and/or is considered proprietary and confidential."  Fields responded with two emails to a Nationstar representative on August 27, accusing Nationstar of falsely claiming to possess the Note and demanding that Nationstar prove that it or WFB Minnesota had possession of the Note.  Two days later, Fields sent further emails to the same Nationstar representative as well as Nationstar's CEO and COO, repeating his prior demands.  Nationstar responded to Fields on September 4, but did not respond to the demands.

As a result of these events, Plaintiffs alleged that they moved out of Las Vegas, have experienced severe emotional distress, and that Ms. Dowers "cries herself to sleep from the abuse, stress, uncertainty, and lies she has suffered."

**B**

Plaintiffs sued Defendants in Nevada state court, asserting six causes of action.  Counts One through Four assert violations of four different FDCPA provisions:  15 U.S.C. §§ 1692c(a)(2), 1692d, 1692e, and 1692f(6).  Count Five asserts a claim of IIED, and Count Six asserts a violation of the DTPA.  Defendants removed the case to federal court and successfully moved to dismiss the entire complaint under Federal Rule of Civil Procedure 12(b)(6).  Plaintiffs timely appealed.

**II**

We have jurisdiction to review the district court's order dismissing Plaintiffs' complaint, 28 U.S.C. § 1291, which we review *de novo*, *O'Brien v. Welty*, 818 F.3d 920, 929 (9th Cir. 2016).  To determine whether dismissal under Rule 12(b)(6) was appropriate, we accept as true Plaintiffs' nonconclusory factual allegations, construe all reasonable inference in favor of Plaintiffs, and ask whether the facts are sufficient to state a claim to relief that is plausible on its face.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**III**

Defendants contend that Plaintiffs' FDCPA counts fail to state a claim for relief because Defendants did not engage in "debt collection" and were not acting as "debt collectors."  We agree that the claims under 15 U.S.C. §§ 1692c(a)(2), 1692d, and 1692e fail for that reason.  With respect to the Section 1692f(6) claim, however, we disagree.  That provision governs Defendants' alleged conduct because it

expressly applies to the enforcement of security interests such as a deed of trust.

## A

The FDCPA defines a "debt collector" in relevant part as:

> any person who . . . [engages] in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. . . . For the purpose of section 1692f(6) of this title, such term also includes any person who . . . [engages] in any business the principal purpose of which is the enforcement of security interests.

15 U.S.C. § 1692a(6). A "debt" is "any obligation or alleged obligation of a consumer to pay money arising out of a transaction." 15 U.S.C. § 1692a(5). Each of the four FDCPA provisions under which Plaintiffs sue applies to only the conduct of a "debt collector." *See id.* § 1692c(a)(2) ("[A] debt collector may not communicate with a consumer in connection with the collection of any debt . . . if the debt collector knows the consumer is represented by an attorney with respect to such debt . . . ."); *id.* § 1692d ("A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."); *id.* § 1692e ("A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."); *id.* § 1692f ("A debt collector may not use unfair or unconscionable means to collect or attempt

to collect any debt."). It follows that if Defendants were not acting as "debt collectors" when interacting with Plaintiffs, these claims should be dismissed.

**B**

Our decision in *Ho v. ReconTrust Co.*, 840 F.3d 618 (9th Cir. 2016), makes clear that the district court properly dismissed Plaintiffs' claims under Sections 1692c(a)(2), 1692d, and 1692e. There, Ho purchased a home using borrowed funds secured by a deed of trust, of which ReconTrust was the trustee. *Id.* at 619–20. After Ho missed a payment, ReconTrust mailed to Ho notices of default and sale, both of which advised Ho that ReconTrust would initiate a non-judicial foreclosure if Ho did not make her loan current. *Id.* at 620. Ho brought a claim under Section 1692e against ReconTrust, alleging that the notices misrepresented the amount she owed. *Id.*

We affirmed the dismissal of Ho's Section 1692e claim because ReconTrust's conduct, as alleged, did not amount to debt collection activity. ReconTrust was enforcing a security interest, not collecting a debt, which, "[f]or the purposes of the FDCPA, . . . is synonymous with 'money.'" *Id.* at 621 (quoting 15 U.S.C. § 1692a(5)). "The object of a non[-]judicial foreclosure is to retake and resell the security, not to collect money . . . . Thus, actions taken to facilitate a non-judicial foreclosure . . . are not attempts to collect 'debt' as that term is defined by the FDCPA." *Id.* We rejected Ho's argument that ReconTrust's notices amounted to debt collection because they had the effect of prompting Ho to pay money she owed, explaining that it was the *lien* that prompted Ho to pay off her loan, not ReconTrust's actions. *Id.* ("The fear of having your car impounded may induce you to pay off

a stack of accumulated parking tickets, but that doesn't make the guy with the tow truck a debt collector."); *see also id.* at 623–24.

We also reasoned that Section 1692a(6)'s clause establishing a more expansive definition of "debt collector" for purposes of Section 1692f(6) compels the conclusion that security interest enforcers are not debt collectors for purposes of the entire FDCPA. *Id.* at 622. As noted, that clause states, "[f]or the purpose of section 1692f(6)," a debt collector "*also includes*" a security interest enforcer. 15 U.S.C. § 1692a(6) (emphasis added). Not only does the "also includes" language make clear that, for purposes of the FDCPA outside of Section 1692f(6), a security interest enforcer is *not* a debt collector, but also this clause "would be superfluous if all entities that enforce security interest were already included in the definition of debt collector for purposes of the entire FDCPA." *Ho*, 840 F.3d at 622.

At bottom, *Ho* held that while the FDCPA regulates security interest enforcement activity, it does so *only* through Section 1692f(6). As for the remaining FDCPA provisions, "debt collection" refers only to the collection of a money debt.

This controlling precedent precludes Plaintiffs' claims under 15 U.S.C. §§ 1692c(a)(2), 1692d, and 1692e. Nothing in Plaintiffs' complaint suggests that Defendants engaged in the collection of a money debt. The complaint does not allege that WFB or WFB Minnesota engaged in any collection-related activity, and the allegations suggest only that Nationstar was engaged in enforcement of the Deed of Trust, a security interest.

Plaintiffs try to distinguish *Ho* by arguing that Nationstar's alleged conduct was not necessary to enforce the trust beneficiary's security interest. But that fact, even if true, does not lead to the conclusion that Nationstar engaged in *debt collection*.[2] Nationstar's conduct was not an attempt to collect a money debt, which is a necessary element of a claim under Sections 1692c(a)(2), 1692d, or 1692e. *Ho* commands that Plaintiffs cannot assert a claim under those FDCPA provisions unless Nationstar was collecting a money debt.[3]

## C

The district court erred, however, when it dismissed Plaintiffs' claim under Section 1692f(6) on the ground that Nationstar was not collecting a debt.

Unlike under Sections 1692c(a)(2), 1692d, and 1692e, the definition of debt collector under Section 1692f(6) includes

---

[2] In *Ho*, the inability under California law to obtain a deficiency judgment following non-judicial foreclosure was integral to our conclusion that ReconTrust's actions taken to facilitate a non-judicial foreclosure were not attempts to collect debt. *Ho*, 840 F.3d at 621. Here, Nevada law would have similarly prohibited Nationstar from obtaining a deficiency judgment against the Dowers had Nationstar non-judicially foreclosed on the property. *See* Nev. Rev. Stat. § 40.455(3).

[3] Plaintiffs also contend that construing the term "debt collector" in this manner amounts to granting security interest enforcers "blanket immunity." We disagree. As explained below, Section 1692f(6) directly regulates the conduct of security interest enforcers. Further, *Ho*'s holding that the FDCPA does not regulate the conduct of security interest enforcers (outside of Section 1692f(6)) in no way immunizes Defendants from claims arising under other sources of law. It only clarifies that Plaintiffs cannot invoke the FDCPA (outside of Section 1692f(6)) on the facts alleged.

a person enforcing a security interest.  15 U.S.C. § 1692a(6). Section 1692f(6) regulates more than just the collection of a money debt.  It prohibits:

> [t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property if – (A) there is no present right to possession of the property claimed as collateral through an enforceable security interest; (B) there is no present intention to take possession of the property; or (C) the property is exempt by law from such dispossession or disablement.

15 U.S.C. § 1692f(6).

The district court dismissed all four of Plaintiffs' FDCPA claims because Defendants' conduct "relate[d] to non-judicial foreclosure attempts."  But Section 1692f(6) regulates non-judicial foreclosure activity.  Again, *Ho* is instructive:  when contrasting Section 1692f(6) with the other FDCPA provisions, we noted that ReconTrust was clearly a debt collector for purposes of Section 1692f(6) because ReconTrust was enforcing a security interest.  *See Ho*, 840 F.3d at 622.  Here, Plaintiffs alleged that Nationstar threatened to take non-judicial action to dispossess Plaintiffs of their home without a legal ability to do so.  Such conduct is exactly what Section 1692f(6) protects borrowers against. As a result, the district court should not have dismissed Count Four on the ground that Nationstar was engaging in conduct related to non-judicial foreclosure.

**IV**

The district court correctly dismissed Plaintiffs claims of IIED and of violation of the DTPA. To state a claim of IIED under Nevada law, Plaintiffs must allege "(1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress, (2) the plaintiff's having suffered severe or extreme emotional distress and (3) actual or proximate causation." *Olivero v. Lowe*, 995 P.2d 1023, 1025 (Nev. 2000) (quoting *Star v. Rabello*, 625 P.2d 90, 91–92 (Nev. 1981)). Plaintiffs' allegations did not meet the first element of extreme and outrageous conduct. Such conduct must be "outside all possible bounds of decency" and "regarded as utterly intolerable in a civilized community." *Maduike v. Agency Rent-A-Car*, 953 P.2d 24, 26 (Nev. 1998) (internal quotations marks omitted). The complaint alleges that Nationstar threatened to foreclose on a property without authority to do so because it did not possess the original loan documents, contacted Plaintiffs directly after Plaintiffs' attorney told it not to do so, and delayed the rescission of a previously-recorded notice of default. Assuming these facts to be true, Defendants' conduct does not meet the threshold of extreme and outrageous as it has been described by the Supreme Court of Nevada. *See State v. Eighth Judicial Dist. Ct. ex rel. Cty. of Clark*, 42 P.3d 233, 241 (Nev. 2002); *Barmettler v. Reno Air, Inc.*, 956 P.2d 1382, 1386 (Nev. 1998); *Maduike*, 953 P.2d at 26.

With respect to Plaintiffs' DTPA claim, the complaint does not identify which provision of the DTPA Plaintiffs contend Defendants have violated. While the Supreme Court of Nevada has not settled this issue, we agree with the district court in predicting that the Supreme Court of Nevada would hold that real estate loans do not fall within the DTPA. The

DTPA governs transactions relating to "goods and services," *see* Nev. Rev. Stat. §§ 598.0915–598.0925, 598.0934, and a real estate loan is neither a good nor a service within the meaning of this statute.

**V**

The district court properly dismissed Plaintiffs' claims of violations of 15 U.S.C. §§ 1692c(a)(2), 1692d, and 1692e; IIED; and violation of the DTPA.  The district court erred, however, by dismissing Plaintiffs' claim under 15 U.S.C. § 1692f(6) on the ground that Defendants' alleged conduct constituted enforcement of a security interest.   Section 1692f(6) regulates such conduct.

**AFFIRMED in part, REVERSED in part, and REMANDED.**